IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | No. 3:15-cr-221-O-1 |
| | § | |
| RANDY DEWAYNE PITTMAN, | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are defendant Randy Dewayne Pittman's ("Pittman") *Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)* and *Motion for Default Judgment*. ECF Nos. 138, 147. After considering the motions and the relief sought by Pittman, the Court denies the motions.

### I.   BACKGROUND

On November 4, 2015, Pittman pled guilty to one count of felony in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* ECF Nos. 36, 88. He was sentenced to 51 months' imprisonment, to be followed by a three-year term of supervised release. *See* ECF No. 88. Pittman's supervised release began on May 24, 2019. On June 19, 2019, Pittman was arrested in DeKalb County, Alabama and later pled guilty to a state charge of Unlawful Possession of a Controlled Substance. (Cause No. CC-2020-1634). On March 8, 2021, he was sentenced to 24 months of state probation for the possession of a controlled substance charge. *See* ECF No. 117 at 2. Then, on June 25, 2021, he received a 120-day sentence for violating his state probation based on his providing a probation officer with a forged government document. *See* ECF No. 130-1 at

1

45. On September 24, 2021, subsequent to a hearing, Pittman's probation was revoked and he was placed in state custody, where he remained until being transferred to the custody of the U.S. Marshals Service ("USMS") on January 10, 2022. On January 12, 2022, Pittman appeared before the United States magistrate judge and waived detention. *See* ECF No. 123. On February 10, 2022, Pittman pled true to Violation I of the revocation petition, which charged him with the commission of a state crime (the unlawful possession of a controlled substance in Dekalb County, Alabama, Cause No. CC-2020-1634). *See* ECF No. 135.[1] Pittman's supervised release was revoked accordingly, and he was sentenced to be imprisoned for a term of twelve months and one day. *See id.* at 2.

On March 18, 2022, Pittman filed the pending motion for compassionate release related to the February 10, 2022 sentence. *See* ECF No. 138. Pittman claims that he is entitled to a compassionate release because: (1) he suffers from an incurable blood disease, chronic obstructive pulmonary disease ("COPD"), sleep apnea, severe asthma, chronic bronchitis, obesity, hypertension, and prediabetes and, given these ailments, he is in the highest risk of death if exposed to COVID-19; (2) he has no violent criminal history; (3) his mother's home is the best place for him to serve a home confinement setting; (4) he has multiple psychotic disorders; (5) the Social Security Administration has determined that he is permanently disabled; (6) while at the Federal Medical Center

---

[1] Pittman also has a pending indictment in the Northern District of California charging him with various federal crimes alleged to have occurred between May and August 2020. *See United States v. Randy Pittman*, No. 4:21-cr-00418-HSG (N.D. Cal. 2022). After waiving an identity hearing and electing to have his detention hearing conducted in the Northern District of California (*See United States v. Pittman*, 3:22-mj-00223-BH-1 (N.D. Tex.) ECF No. 7), Pittman was transferred from the custody of the Federal Bureau of Prisons ("BOP") to the custody of the USMS. Pittman is currently in USMS custody at the Alameda County Jail in Dublin, California. ECF No. 150. His Northern District of California trial is set to begin on August 15, 2022. *See United States v. Randy Pittman*, No. 4:21-cr-00418-HSG (N.D. Cal. 2022).

in Fort Worth, he was denied routine access to his CPAP machine; (7) while at the Federal Medical Center, he was denied access to fourteen medications that he uses; (8) he tested positive for COVID-19 in December 2021; (9) while at the Federal Medical Center, he was housed in a small space with multiple individuals and the toilet would routinely not flush; and (10) he needs to act as a primary caregiver to his disabled mother. *See generally* ECF No. 138. The Government filed a response under seal. ECF No. 146. Pittman has since filed a motion for default judgment (ECF No. 147), and various papers that appear to be reply briefs in further support of his motion for compassionate release (ECF Nos.148-152).[2]

## II.   ANALYSIS

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i))); *see also id.* at 693 n.1. When deciding whether to modify a term of imprisonment, the court must "consider [] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that

---

[2] In his most recently-filed document – ECF No. 152 – Pittman seems to challenge the validity of his sentence. *See* ECF No. 152 at 3. But a motion attacking the merits of a conviction and sentence is properly pursued through a 28 U.S.C. § 2255 motion, not in a motion for compassionate release. *See*, *e.g.*, *United States v. James*, Case No. 13-20669, 2021 WL 2012783, at *2 (E.D. Mich. May 20, 2021) (citations omitted). As it is unclear whether Pittman actually intends to file a § 2255 motion, the Court will direct the Clerk of Court to mail him a copy of the Court's standard 28 U.S.C. § 2255 form petition in the event that he does intend to file such a motion.

they are applicable." 18 U.S.C. § 3582(c)(1)(A). Of course, it is well-settled that "neither the policy statement" of the Sentencing Commission "nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nevertheless, the policy statement and its accompanying commentary are not irrelevant. "Courts should still look to the policy statement for guidance in determining what constitute 'extraordinary and compelling reasons' for sentence reduction when a prisoner files a compassionate release motion." *United States v. Fournier*, CRIMINAL NO. 4:12-CR-276-SDJ, 2022 WL 1645085, at *4 (E.D. Tex. May 24, 2022) (citing *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

Initially, as to the claims presented in the actual compassionate release motion, Pittman asserts that he exhausted them by filing a request for compassionate release with the Warden on February 21, 2022, which the Warden then denied or failed to address. *See* ECF No. 138 at 2. The Government does not contest that Pittman exhausted the claims in his actual compassionate release motion, and the Court proceeds as if he did exhaust those claims.[3]

Tuning to the merits, Pittman has not shown extraordinary and compelling circumstances warranting a compassionate release.[4] Initially, because Pittman is no

---

[3] However, to the extent that any of Pittman's numerous filings in further support of compassionate release raise new claims or arguments in favor of compassionate release, Pittman has not exhausted these claims, and, to the extent presented, they are denied without prejudice on that basis. *See*, *e.g.*, *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (noting that a prisoner *must* exhaust their BOP remedy before filing in district court and declining to address new arguments in favor of compassionate release that were not exhausted).

[4] The Government also argues that Pittman's motion is moot. It notes that, since June 25, 2021, Pittman has been in the continuous custody of (1) DeKalb County, Alabama, (2) USMS in the Northern District of Texas, (3) BOP, and (4) USMS in the Northern District of California. And, according to the Government,

longer housed at the Federal Medical Center in Fort Worth, any arguments for compassionate release related to that facility's failure to provide proper care for his medical conditions or the general conditions of confinement at that facility are moot. *See*, *e.g.*, *United States v. Mejia*, 18-CR-557 (VSB), 2021 WL 2554593, at *5 (S.D.N.Y. June 22, 2021) ("While Mejia's motion for compassionate release was pending, he was transferred to Long Beach RRM. As such, "[n]ow that [Mejia] has been transferred, his reliance on the conditions of [FDC SeaTac] is moot.") (citing *United States v. Hooker*, No. 18 CR 768 (RMB), 2020 WL 6504539, at *3 (S.D.N.Y. Nov. 5, 2020); *United States v. Gumbs*, No. 16-CR-821 (NSR), 2021 WL 1372964, at *1 (S.D.N.Y. Apr. 9, 2021)); *see also United States v. Sevilla-Acosta*, Case No. 10-CR-023(22) (PJS/FLN), 2020 WL 6589797, at *1 (D. Minn. Nov. 10, 2020) (finding compassionate release motion moot when it was based on the inmate's alleged inability to provide self-care in the Federal Prison Camp in Duluth and the inmate had been transferred to another facility) (further citation omitted). So, Pittman's assertions that the Federal Medical Center did not allow routine access to a CPAP machine, failed to provide his medications, housed him with multiple individuals, and that the toilets would routinely not flush do not amount to extraordinary and compelling circumstances.

---

because Pittman has a projected release date from his revocation sentence in late June 2022 (assuming he is credited for time served in state custody and not counting his potential 54 days in good-time credit), and because Pittman will "almost certainly" remain in USMS custody until his revocation sentence has ended, "it is very likely that his request is moot." ECF No. 146 at 6. The Court understands the Government to argue that Pittman's motion is moot because Pittman is in USMS – and not BOP –custody and will so remain until the conclusion of his sentence. The Court has not located any authority squarely supporting the Government's position, and the Government did not provide any. Undoubtedly, courts have held that when an inmate is released from custody, the compassionate release motion is mooted. *See*, *e.g.*, *United States v. Sanchez*, Case No. 16-cr-2077-BEN, 2021 WL 5999764, at *1 (S.D. Cal. Dec. 17, 2021). Here, though, Pittman has not been released from custody. The Court therefore presumes, without deciding, that Pittman's compassionate release motion, or at least those aspects of it that do not depend upon his confinement at Federal Medical Center in Forth Worth, present a live controversy.

Nor do Pittman's COVID-19 concerns amount to an extraordinary and compelling circumstance. It is well-established that the mere existence of COVID-19 and a prisoner's general concerns of acquiring it do not – standing alone – provide "extraordinary and compelling" reasons for sentence reduction. *See*, *e.g.*, *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a petitioner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement.").

Further still, even if Pittman could show that one or more of his ailments in fact put him at a higher risk of serious illness of death from COVID-19, Pittman refused an available COVID-19 vaccination. *See* ECF No. 144-1 at 167. Courts have refused to find extraordinary and compelling circumstances relating to COVID-19 when the petitioner refuses to take a COVID-19 vaccine. *See*, *e.g.*, *United States v. Pruitt*, No. 3:14-CR-0384-B, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) ("The Court agrees with the Government that Pruitt cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand.") (internal

6

quotation marks omitted); *United States v. Walker*, No. 3:15-CR-170-N (ECF No. 154 at 5) (N.D. Tex. Feb. 9, 2021) ("Like many other federal courts, this Court is not inclined to find compelling circumstances for reducing [an inmate's] sentence based on COVID-19 concerns when he has declined to take available precautions against infection."); *see also United States v. Lohmier*, No. 12-CR-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (collecting cases). Pittman's concern that he is at the highest risk of death if exposed to COVID-19 is not an extraordinary and compelling circumstance justifying compassionate release.[5]

And the other arguments that Pittman presents for satisfying the extraordinary and compelling circumstances requirement are not persuasive, either. Pittman's desire to care for his mother is understandable but does not constitute grounds for a compassionate release. *See*, *e.g.*, *United States v. Envert Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while…admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Goldberg*, No. CR12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that a desire to care for one's elderly parents does not constitute an extraordinary and compelling reason because "[m]any, if not all inmates, have aging and sick parents") (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019))).

---

[5] Also, Pittman already had COVID-19 and recovered from it. This weighs against finding a COVID-19-bassed extraordinary and compelling circumstance. *See*, *e.g.*, *United States v. Hignight*, CASE NO. 4:14-CR-129(4), 2021 WL 5299249, at *5 (E.D. Tex. Nov. 12, 2021) (collecting cases).

Nor do Pittman's mental health issues, which allegedly include depression, bi-polar disorder, opioid use disorder, anxiety, PTSD, and benzodiazepine disorder, constitute extraordinary and compelling circumstances. Again, although the Sentencing Commission policy statement and its commentary are not binding, they are relevant to the analysis, and the Court notes that Pittman has not shown that his mental health issues amount to a terminal illness or substantially diminish his ability to provide self-care within the environment of a correctional facility, which would make them extraordinary and compelling under the guideline commentary. *See United States v. David Samuels*, CRIMINAL ACTION NO: 09-123, 2022 WL 2116918, at *2 (E.D. La. June 13, 2022) (noting that the commentary to U.S.S.G. 1B1.13 provides useful guidance on when a medical condition provides an extraordinary and compelling reason justifying compassionate release); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wisc. Mar. 9, 2020) (concluding that the defendant's mental health issues, including depression from his son's recent death, did not constitute an extraordinary and compelling reason under the First Step Act); *United States v. Williams*, 2021 WL 37536, at *5 n.10 (D.N.J. Jan. 4, 2021) (concluding that a defendant's mental health issues including PTSD and depression did not constitute either extraordinary and compelling reasons for release nor risk factors that placed the defendant at an increased risk from COVID-19).

Next, Pittman claims that the Social Security Administration has declared him to be permanently disabled so he will have a source of income in place should he be released from BOP custody or to home confinement. The Court has located no authority for the proposition that a permanently disabled determination by the Social Security Administration is an extraordinary and compelling circumstance justifying compassionate

release and declines to find that it is here. As discussed above, the Court has already determined that the mental and physical conditions upon which this alleged Social Security Administration determination are presumably based do not justify a compassionate release.

And, even were the Court to assume that Pittman could show an extraordinary and compelling circumstance warranting a compassionate release, the Section 3553(a) factors counsel against relief. Pittman violated his terms of supervised release less than one month into his supervision period by committing a state offense on June 19, 2019. And he was revoked on the probation he received for that new offense because he presented forged government document to his probation officer. He also has an extensive criminal history – with a criminal history category of V – set forth in the presentence investigation report, which weighs against relief because of the § 3553(a) factors related to deterrence of future criminal activity and the safety of the community. *See*, *e.g.*, *United States v. McDougal*, Criminal No. 1:08-cr-91-HSO-RHW-5, 2022 WL 1019229, at *6 (S.D. Miss. Apr. 5, 2022) (finding that, although the defendant claimed to have served over 80% of his statutory sentence, his lengthy criminal history and the nature and circumstance of the offense weighed against a compassionate release) (citing 18 U.S.C. § 3553(a)).

Next, if Pittman is asking this Court to transfer him to home confinement, "neither the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement." *United States v. Miller*, Criminal No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (citing *United States v. Depron*, 2020 WL 2308636, at *1 (E.D. La. May 8, 2020); *United States v. Rakestraw*, 2020 WL 2119838, at *2 (N.D. Tex. Apr. 14,

9

2020), *rec. accepted*, 2020 WL 2114844 (N.D. May 1, 2020)). To the extent that Pittman seeks home confinement, his request is denied.

Finally, Pittman moves for a default judgment on his compassionate release motion. *See* ECF No. 147. But the Government responded to his motion, so the motion for default judgment is denied on that basis. *See United States v. Barberree*, Case No.: 8:09-cr-266-T-33MAP, 2020 WL 2097886, at *1 (M.D. Fla. May 1, 2020) (denying motion for default judgment related to compassionate release motion because the Government responded to the motion). And, at any rate, Pittman has not shown entitlement to relief, so the motion is denied on that basis as well.

### III.     CONCLUSION

It is **ORDERED** as follows:

1. Pittman's *Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)* is **DENIED**;

2. Pittman's *Motion for Default Judgment* is **DENIED**;

3. The Clerk of Court shall send Pittman, along with the copy of this memorandum opinion and order, a copy of the Court's standard 28 U.S.C. § 2255 form in the event that he wishes to file a motion to vacate, set aside, or correct his sentence.

**SO ORDERED** this 15th day of June, 2022.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**